AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

FILED _____ LODGED
_____ RECEIVED

MAY 12 2017

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

The locations and vehicle more particularly described in
Attachments A1 through A3

)
)
)
)
)
)
)

Case No.

MJ17-5088

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachments A1 through A3, attached hereto and incorporated by reference herein,

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 843, 846 | Drug trafficking |
| 18 USC 1956, 1957 | Money laundering |

The application is based on these facts:

See Affidavit of DEA TFO Antony Nisco, attached hereto and incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Antony Nisco, DEA Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/12/17

_____
*Judge's signature*

City and state: Tacoma, Washington

David W. Christel, United States Magistrate Judge
*Printed name and title*

USAO 2017R00530

| | |
|---|---|
| 1 | **AFFIDAVIT** |

STATE OF WASHINGTON     )
                         )     ss
COUNTY OF PIERCE         )

I, Antony Nisco, being first duly sworn on oath, deposes and says:

## I.    AFFIANT BACKGROUND AND EXPERIENCE

1.    I am a limited commission law enforcement peace officer of the Washington State Department of Corrections (WADOC), assigned to the Drug Enforcement Administration (DEA) Tahoma Narcotics Enforcement Team (TNET). I am deputized as a fully-commissioned law enforcement Task Force Officer of the DEA. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.).

2.    Prior to my current assignment at DEA TNET, I was assigned to the Federal Bureau of Investigation South Sound Gang Task Force (the FBI SSGTF), and was charged with investigating violent and narcotics-related crimes primarily committed by gang members in the Tacoma/Pierce County area, and locating and arresting fugitives wanted for new crimes and violations of their supervision under WADOC. While assigned to the FBI SSGTF, I was deputized and sworn by the FBI as a Special Federal Officer of the FBI and Special Deputy of the Pierce County Sheriff's Office. I have over seven years of experience as a law enforcement officer conducting criminal and fugitive investigations. I have been employed by WADOC for over 17 years.

3.    I have been assigned to the DEA TNET since October 1, 2011. The DEA TNET is comprised of officers, agents, and deputies from the DEA, Pierce County Sheriff's Office, Tacoma Police Department, Fife Police Department, Bonney Lake Police Department, Washington State Patrol, Puyallup Police Department, Auburn Police Department, Lakewood Police Department, and WADOC. As a member of TNET, I have participated in multiple criminal investigations and search warrants involving organizations trafficking in controlled substances. Many of these investigations have

AFFIDAVIT OF ANTONY NISCO - 1
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | involved drug trafficking organizations either based in or tied to Mexico. I have also
2 | participated in several investigations involving drug traffickers based in the United States
3 | of America responsible for distributing various narcotics across several states. Through
4 | my training and experience, I have an understanding of the manner in which drugs are
5 | distributed and the various roles played by individuals and groups in their distribution.
6 | Additionally, I have participated in complex investigations involving organized crime
7 | and large-scale drug trafficking organizations. I have an understanding of how Mexican
8 | drug trafficking organizations operate, as well as how locally-based narcotics distribution
9 | networks and organizations are constructed, managed, and sourced.

10 |     4.    While employed as a WADOC Community Corrections Specialist, I served
11 | as a Task Force Officer/Investigator/Special Deputy with the FBI SSGTF and DEA
12 | TNET and the WADOC Fugitive Apprehension Unit. My training with the State of
13 | Washington includes completing the Corrections Officer Academy and Adult Services
14 | Academy. I have located, contacted, arrested, and interviewed many subjects suspected
15 | of committing crimes, as well as subjects that were fugitives from justice for both new
16 | criminal offenses and violations of WADOC supervision. I have completed the DEA
17 | Drug Investigator/Task Force Officer Academy. This academy focused on, among other
18 | things, drug identification, testing, and investigation, mobile and static surveillance
19 | techniques, confidential source development and management, undercover work,
20 | interviewing techniques, controlled purchases of narcotics, and the use of electronic
21 | surveillance to include radio transmitters, recording devices, pen register/trap and trace,
22 | and global positioning system tracking systems/units. I have received an extensive
23 | amount of training and experience involving criminal investigations, fugitive
24 | apprehension, and electronic surveillance techniques. I have received additional law
25 | enforcement and fugitive investigative training through the Pierce County Sheriff's
26 | Office, Tacoma Police Department, the DEA, and the WADOC. I have on-the-job
27 | experience tracking subjects of criminal and fugitive investigations involving the
28 | installation and use of GPS tracking devices and telephone tracking technology. I have

AFFIDAVIT OF ANTONY NISCO - 2
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   conducted electronic surveillance operations via the use of GPS tracking devices that

2   have aided in the surveillance, arrest, and prosecution of narcotics traffickers.

3                    **II.    PURPOSE OF AFFIDAVIT**

4         5.       This Affidavit is submitted in support of an application to search the

5   following two locations and one vehicle, as further described in Attachments A1, A2, and

6   A3, for evidence, fruits, and instrumentalities of drug trafficking and money laundering

7   crimes committed by IVY SAVONTAY SMITH, in violation of Title 21, United States

8   Code, Sections 841(a)(1), 843(b), and 846, and Title 18, United States Code, Sections

9   1956 and 1957, as further described in Attachment B.  The locations and vehicle that I am

10  requesting authorization to search are identified in bold font throughout this Affidavit,

11  and each specific location and vehicle is described more particularly in Attachment A1-

12  A3.  With respect to the vehicles, although my application to search each of the two

13  locations includes the request to search vehicles found on the curtilage of the respective

14  location, I am specifically requesting authorization to search the specific vehicle listed

15  herein in the event it is not physically present or otherwise within the curtilage of the

16  particular location being searched.

17  **A.   Locations to be Searched**

18         i.       Primary residence of IVY SAVONTAY SMITH:  **5937 South I Street,**

19  **Tacoma, Washington;**

20         ii.      Secondary residence of IVY SAVONTAY SMITH:  **2906 South 13th**

21  **Street, Tacoma, Washington**

22  **B.   Vehicle to be Searched**

23         i.       Vehicle driven by IVY SAVONTAY SMITH:  a white 1999 Dodge

24  Caravan, bearing Washington license **AYH1572** and vehicle identification number (VIN)

25  2B4GP44G8XR171777 (also referred to as Target Vehicle 1, or **TV1**).

26                 **III.    INVESTIGATION OVERVIEW**

27         6.       Since March 2016, the DEA Tacoma Resident Office (TRO) has been

28  investigating the illegal sales of narcotic prescription pills, specifically 30 milligram (mg)

AFFIDAVIT OF ANTONY NISCO - 3
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   oxycodone pills, by IVY SAVONTAY SMITH and his associates.  Investigators
2   debriefed two confidential sources, both of which provided information on SMITH's role
3   in the illegal selling of oxycodone pills in the Tacoma, Washington area.  Based on this
4   information, investigators learned that SMITH is regularly in possession of several
5   hundreds of oxycodone pills at any given time, and that SMITH sells the pills to a wide
6   spectrum of customers in quantities ranging from five to several hundred pills per
7   transaction, depending on the customer's needs and ability to purchase larger quantities.

8       7.      Within the past year, investigators have made five controlled purchases of
9   oxycodone pills from SMITH both via a "middle-person" and from SMITH directly via a
10  confidential source.  Investigators have conducted mobile and static surveillance
11  operations of SMITH before, during, and after the controlled purchases, as well as at
12  times independent from any scheduled controlled purchase.  Investigators have identified
13  SMITH's primary and secondary residences, a vehicle used by SMITH during controlled
14  purchases and other suspected narcotics-selling behavior, and two phone numbers used
15  by SMITH to conduct narcotics selling.

16                      **IV.    SOURCES OF INFORMATION**

17      8.      My knowledge of the facts set forth in this Affidavit is a result of my
18  personal participation in the investigation, my conversations with other law enforcement
19  personnel participating in this and related investigations, my review of relevant
20  documents, and my correspondence with confidential sources.

21      9.      The controlled purchases, surveillance observations, GPS location data, and
22  confidential source information described herein do not encompass all of the information
23  collected in regards to the instant investigation.  Rather, I have set forth only the facts that
24  I believe are essential to establish the necessary foundation for the issuance of the
25  requested search warrants.  As such, I have included in this Affidavit several examples of
26  drug trafficking activity as they relate to each location, and some of these examples
27  encompass drug trafficking activity as it relates to the specific vehicle investigators seek
28  authorization to search.  Since I am submitting this Affidavit for the limited purpose of

AFFIDAVIT OF ANTONY NISCO - 4
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   establishing probable cause to obtain search warrants for the residences and vehicle

2   identified above and in Attachments A1 through A3, I have set forth only the facts that I

3   believe are necessary to establish probable cause for these warrants.

4       10.    During the course of this investigation, agents have received information

5   from two confidential sources.  The confidential sources discussed in this Affidavit are

6   described below.

7   **A.    Confidential Source One**

8       11.    Confidential Source One (CS1) agreed to cooperate with law enforcement

9   in July 2014, after being arrested for Conspiracy to Deliver a Controlled Substance in

10  Tacoma, Washington, in exchange for judicial considerations regarding his/her arrest and

11  pending criminal charges and/or sentencing.  After his/her arrest, investigators

12  interviewed CS1 regarding his/her involvement in narcotics sales.

13      12.    CS1 admitted to multi-year involvement in the sales of cocaine, narcotic

14  prescription pills, and marijuana.  CS1 displayed a working knowledge of the street

15  prices of powder cocaine, prescription narcotic pills, and marijuana, as well as normal

16  packaging methods used for the illicit street sales.  Since agreeing to cooperate, CS1 has

17  completed controlled purchases of narcotics from and provided information on local

18  narcotics distributors that has led to the execution of search warrants, seizures of

19  narcotics, firearms, and US currency, and the arrest, prosecution, and sentencing of

20  narcotics distributors.  CS1 has consistently provided accurate information that has been

21  corroborated by investigators.  CS1's criminal history consists of a 2005 conviction for

22  Third Degree Assault.

23  **B.    Confidential Source Two**

24      13.    Confidential Source Two (CS2) agreed to cooperate with law enforcement

25  in February 2017, after investigators approached and interviewed him/her regarding

26  his/her involvement with SMITH and the illegal sale of narcotic prescription pills.

27      14.    During this initial and subsequent interviews, CS2 admitted he/she had

28  been purchasing oxycodone pills from SMITH for over five years, and he/she often acted

AFFIDAVIT OF ANTONY NISCO - 5
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  as a middle-person or "hookup" between CS2's friends that wanted to buy oxycodone
2  pills and SMITH, who could provide the oxycodone pills. CS2 provided investigators
3  with SMITH's address, phone numbers, and vehicle description. Through previous
4  investigative efforts, investigators had already identified SMITH's residence and
5  vehicles, and were able to corroborate the information provided by CS2. CS2 displayed a
6  working knowledge of the street prices of prescription narcotic pills, as well as normal
7  packaging methods used for the illicit street sales. CS2 does not have any known
8  criminal convictions.

9        15.    This Affidavit also refers to GPS location tracking data used by
10  investigators to identify the location of **TV1**. All of the GPS tracking data referenced
11  herein was obtained pursuant to state court authorization (i.e., tracking warrants), upon a
12  finding of probable cause that the respective vehicle was used to facilitate drug-
13  trafficking activity.

14                 **V.    SUMMARY OF PROBABLE CAUSE**

15        16.    The following summary of this investigation is offered in support of my
16  belief that probable cause exists to believe that the two residences described in
17  Attachments A1 and A2, including outbuildings and vehicles located within the curtilage
18  of the same, as well as the specific vehicle described in Attachment A3, contain evidence,
19  fruits and/or instrumentalities of IVY SAVONTAY SMITH's drug trafficking.

20  ***CS1 provides initial information to investigators regarding SMITH's sale of***
21  ***prescription narcotic pills.***

22        17.    As noted above, CS1 agreed to cooperate with law enforcement following
23  his/her arrest in July 2014. Investigators received initial information from CS1 regarding
24  SMITH in March 2016. CS1 stated that he/she could purchase 30mg oxycodone pills
25  from an individual who acted as a middle-person for a black male known to CS1 as
26  "Ivy." CS1 was able to provide an approximate address, place of employment, vehicle
27  description, and phone number for this individual. CS1 stated that he/she had known this
28  individual for many years and that he/she used to supply illegal prescription narcotics to

AFFIDAVIT OF ANTONY NISCO - 6
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  this individual when CS1 was an active dealer.  CS1 told investigators that a friend of

2  his/hers buys 30mg oxycodone pills from this individual via "Ivy."  CS1 stated that

3  he/she had spoken to this individual and the individual agreed to sell 30mg oxycodone

4  pills to CS1 directly, but the individual would need to obtain the pills from "Ivy" prior to

5  selling them to CS1 and would need to provide the controlled purchase funds to "Ivy"

6  following the purchase.

7         18.    Based on information provided by CS1, database queries, and social media

8  research, investigators were able to identify "Ivy" as IVY SAVONTAY SMITH, with a

9  current residence of **5937 South I Street, Tacoma, Washington.**

10 *CS1's controlled purchase on March 28, 2016*

11        19.    On March 28, 2016, at approximately 12:10 pm, CS1 placed a recorded

12 phone call, in the presence of investigators, to the individual described above to arrange

13 the purchase of 30mg oxycodone pills.  During the phone call, this individual agreed to

14 sell the pills to CS1.  The individual stated that he/she had to work at 5:00 pm, but that

15 CS1 could to come to his/her job site to complete the purchase.  The individual stated that

16 his/her source of supply was charging $30.00 per pill.  CS1 stated that he/she wanted to

17 purchase 20 pills.  The individual told CS1 that he/she would be ready, and for CS1 to

18 call him/her when he/she was ready to purchase.

19        20.    As described below, investigators later spoke to this individual in February

20 2017 and he/she agreed to cooperate with law enforcement in their investigation of

21 SMITH.  The individual is the person referred to earlier in this Affidavit as Confidential

22 Source 2 (CS2).  It should be noted that at this stage in the investigation, i.e., prior to

23 February 2017, CS2 ("the individual") was acting as an unwitting informant and as a

24 means for investigators to further the investigation into SMITH.

25        21.    Prior to making the recorded phone call described above, surveillance units

26 established positions near CS2's residence and SMITH's residence.  At approximately

27 1:00 pm, DEA Task Force Officer (TFO) Jeff Crawford observed **TV1** stop directly in

28 front of CS2's residence.  TFO Crawford observed a light-skinned female in the

AFFIDAVIT OF ANTONY NISCO - 7
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   passenger seat and a dark-skinned occupant in the driver's seat of **TV1**. TFO Crawford

2   observed CS2 walk from the area of the front door of his/her residence and start to

3   converse with the occupants of **TV1** through the driver's window. After approximately

4   two minutes, CS2 walked back towards his/her residence and **TV1** departed the area. A

5   records check showed Elizabeth Fukuhara was the registered owner of **TV1** at **5937**

6   **South I Street, Tacoma, Washington**, SMITH's residence. Through investigative

7   efforts, investigators had previously identified Fukuhara as SMITH's wife.

8         22.    Surveillance units followed **TV1** to the Walmart located at 1965 South

9   Union Avenue, Tacoma, Washington. At approximately 1:20 pm, I observed the male

10  driver and female passenger exit **TV1** and walk into the Walmart. I entered the Walmart

11  and was able to positively identify the driver as SMITH and the passenger as Fukuhara.

12        23.    At approximately 2:00 pm, TFO Oliver Hickman observed SMITH and

13  Fukuhara exit the Walmart with Walmart bags, enter **TV1**, and depart the area.

14  Surveillance units followed **TV1** directly to the Merrill Creek apartments located at 6022

15  78th Street Court West, Lakewood, Washington. TFO Justin Chohrach entered the

16  complex a short time later and observed **TV1** parked near the "K" building. TFO

17  Chohrach noticed only Fukuhara seated in **TV1**.

18        24.    At approximately 2:20pm, TFO Jason Catlett observed SMITH walk from

19  the far right breezeway of the "K" building, enter **TV1**, and depart the area. Surveillance

20  units followed **TV1** directly to SMITH's and Fukuhara's residence, **5937 South I Street,**

21  **Tacoma, Washington**. Special Agent (SA) Scott Modesitt observed SMITH and

22  Fukuhara exit **TV1** with the Walmart bags and enter the front door of the residence. SA

23  Modesitt observed SMITH handing Fukuhara a set of keys that she then used to unlock

24  and open the front door of the residence. Investigators terminated surveillance of

25  SMITH's residence but continued surveillance of CS2's residence.

26        25.    At approximately 4:32 pm, TFO Crawford observed **TV1**, occupied only by

27  SMITH, pull up and stop in front of CS2's residence. SA Dan Olson observed CS2 exit

28  the front door of his/her residence and walk towards **TV1**. TFO Crawford observed CS2

AFFIDAVIT OF ANTONY NISCO - 8
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  contact SMITH through the driver's window. After less than one minute, CS2 ended

2  his/her contact with SMITH and entered the front door of his/her residence while SMITH

3  departed the area driving **TV1**.

4      26.    At approximately 5:20 pm, SA Dan Olson observed CS2 exit his/her

5  residence, enter his/her vehicle, and depart the area. Surveillance units followed CS2 as

6  he/she drove directly to his/her place of employment.

7      27.    While investigators were conducting surveillance on CS2's residence, TFO

8  Chohrach and I were with CS1 waiting to hear from CS2 regarding the status of the pills.

9  At approximately 4:34 pm CS1 received a text message from CS2 indicating that he/she

10  had received the pills from his/her source of supply. This text was sent approximately

11  two minutes after investigators had observed SMITH arrive at CS2's residence and

12  briefly meet with CS2 at the window of **TV1**.

13      28.    At approximately 5:11 pm, CS1 placed a second recorded phone call, in the

14  presence of TFO Chohrach and me, to CS2. During this call, CS2 asked CS1 to meet

15  him/her at CS2's place of employment to complete the transaction. Prior to leaving for

16  the controlled purchase, I searched CS1 and found no narcotics on his/her person. I

17  located an undetermined amount of US currency in CS1's jacket chest pocket, and took

18  custody of the currency and maintained control of the currency until the controlled

19  purchase was completed. TFO Chohrach and I then searched CS1's vehicle and found no

20  narcotics or currency. I equipped CS1 with an audio transmitting and recording device. I

21  then provided CS1 with $600.00 in controlled purchase funds to complete the controlled

22  purchase.

23      29.    At approximately 5:30 pm, CS1 left the pre-arranged neutral meeting area.

24  TFO Chohrach and I led CS1 to the controlled purchase location, arriving at

25  approximately 5:38 pm. I observed CS2's vehicle parked near the meeting location.

26      30.    At approximately 5:50 pm, CS2 entered the passenger side of CS1's

27  vehicle. TFO Chohrach and I monitored the audio transmission and heard CS1 and CS2

28  engaging in small talk. We heard CS1 saying, "Here you go," and then heard CS2

AFFIDAVIT OF ANTONY NISCO - 9
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  saying, "There are 20 in there." Investigators observed CS2 exiting CS1's vehicle. CS2
2  was inside of CS1's vehicle for approximately 40 seconds before exiting.

3       31.    TFO Chohrach and I followed CS1 back to the pre-arranged neutral
4  meeting location. CS1 provided me with a small plastic baggie with blue stars on it. The
5  package contained three different varieties of suspected 30mg oxycodone pills with the
6  markings "A215," "M30," and "48 12." These markings were all consistent with
7  oxycodone pills manufactured by different prescription pill manufacturers. I searched
8  CS1 and found no narcotics or currency. TFO Chohrach and I searched CS1's vehicle
9  and found no narcotics or currency. I returned the undetermined amount of US currency
10  that I previously found in CS1's pocket to CS1. CS1 departed the pre-arranged neutral
11  meeting location at approximately 6:00 pm.

12  ***Debrief of CS1 regarding new information on SMITH and CS1's controlled purchase***
13  ***on August 9, 2016***

14       32.    On July 16, 2016, CS1 informed me that a mutual friend of his/hers and
15  CS2's was purchasing pills from SMITH on a regular basis. CS1 stated that he/she was
16  with this individual during the previous 48 hours when this individual purchased
17  oxycodone pills from SMITH at SMITH's residence. CS1 provided me with the address
18  **5937 South I Street, Tacoma, Washington** as SMITH's residence, the location CS1 was
19  at when this individual purchased the pills from SMITH. I had not previously shared this
20  address with CS1. CS1 stated that he/she waited in the vehicle while his/her friend met
21  with SMITH at SMITH's front door.

22       33.    On August 3, 2016, CS1 informed me that his/her friend had agreed to
23  introduce CS1 to SMITH in order to purchase oxycodone pills from SMITH directly.
24  CS1 stated that he/she anticipated meeting with SMITH within the next week. Five days
25  later, CS1 informed me that he/she had arranged, through his/her friend, to meet with and
26  purchase pills from SMITH on August 9, 2016. CS1 contacted me on August 9, 2016,
27  and stated that he/she had talked to his/her friend regarding the introduction to SMITH.
28  Per CS1, his/her friend stated that SMITH was not going to meet with CS1. Investigators

AFFIDAVIT OF ANTONY NISCO - 10
USAO 2017R00530

1  decided instead have CS1 contact CS2, to facilitate another purchase from SMITH via
2  CS2, and introduce CS1 to SMITH via CS2 during this controlled purchase.

3       34.     On August 9, 2016 at approximately 1:00 pm, investigators established
4  surveillance of SMITH's residence at **5937 South I Street, Tacoma, Washington** in
5  preparation for a controlled purchase of oxycodone pills from SMITH. TFO Chohrach
6  and I directed CS1 to make a recorded phone call to CS2. During this conversation with
7  CS1, CS2 agreed to call SMITH (CS2 referred to him as "Ivy") and arrange the purchase
8  of oxycodone pills. A short time later, CS2 called CS1 back and told CS1 that SMITH
9  stated that he did not want to meet CS1. CS2 agreed to facilitate the purchase of
10 oxycodone pills. During a subsequent phone call, CS2 told CS1 that he/she had talked to
11 SMITH and that SMITH had 24 pills left to sell. CS2 told CS1 that CS2 could pick CS1
12 up and they could drive together to meet SMITH at Tacoma General Hospital.

13      35.     While TFO Chohrach and I were with CS1, trying to arrange the purchase
14 with SMITH via CS2, other investigators continued surveillance of **5937 South I Street,**
15 **Tacoma, Washington**, SMITH's residence. At approximately 2:13 pm, TFO Earick and
16 SA Christine Truong observed SMITH, Fukuhara, and two children exit SMITH's
17 residence and enter **TV1**. When **TV1** left the residence, Fukuhara was driving and
18 SMITH was in the front passenger's seat.

19      36.     Surveillance units followed **TV1** but lost sight of it in the area of South
20 48th Street and Tacoma Mall Boulevard due to adverse traffic conditions. TFO Randall
21 Fleming subsequently located **TV1** in the Office Max parking lot located at 4044 Tacoma
22 Mall Boulevard, Tacoma Washington. At approximately 2:30 pm, TFO Fleming advised
23 the other surveillance units that SMITH was walking towards **TV1**. Surveillance units
24 followed **TV1** to the Fed Ex office located at 3815 South Steele Street, Tacoma,
25 Washington, arriving at approximately 2:32 pm. SMITH entered the FedEx office, and
26 Resident Agent in Charge (RAC) Ian McKenzie went into the FedEx office as well. At
27 approximately 2:39 pm, TFO Fleming observed SMITH exit FedEx carrying a box,
28 which SMITH subsequently placed into the rear cargo area of **TV1**. Per RAC McKenzie,

AFFIDAVIT OF ANTONY NISCO - 11
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   SMITH attempted to ship the box, but did not.  A female FedEx employee handed

2   SMITH a piece of paper and stated something to the effect of, "Have a nice trip."  At

3   2:44 pm, SA Truong observed **TV1** leaving the FedEx parking lot.

4          37.     Surveillance was lost on **TV1** after it left the FedEx location.  I contacted

5   surveillance units and notified them that CS2 had told CS1 that SMITH was in the area of

6   Tacoma General Hospital.  Surveillance units headed to that location to attempt to

7   relocate **TV1**.  At approximately 2:52 pm, TFO Earick located **TV1** in the 500 block of

8   South L Street, Tacoma, Washington.  TFO Earick observed SMITH, Fukuhara, and the

9   children exit **TV1** and walk towards the Baker Medical Center located at 316 Martin

10  Luther King Jr. Way, Tacoma, Washington.

11         38.     While investigators conducted surveillance on SMITH as detailed above,

12  TFO Chohrach and I continued to work with CS1 to organize the controlled purchase.

13  Once it was agreed that CS1 would pick up CS2, drive CS2 to meet with SMITH, and

14  purchase 24 30mg oxycodone pills from SMITH, I searched CS1 and found no narcotics

15  or currency.  TFO Chohrach and I searched the CS1's vehicle and found no narcotics or

16  currency.  I equipped CS1 with an audio transmitting and recording device.  I then

17  provided CS1 with $700.00 of controlled purchase funds to complete the controlled

18  purchase.

19         39.     At approximately 3:05 pm, CS1 departed to pick up CS2.  TFO Chohrach

20  and I followed CS1 in a separate vehicle.  While on the way to pick up CS2, CS1

21  received a phone call from CS2.  During the conversation, CS2 informed CS1 that

22  SMITH was in the lobby of the hospital.  CS2 stated that she was going to meet SMITH

23  in the lobby, but that CS1 could not come with him/her to meet with SMITH.  CS2 stated

24  that she was going to talk with SMITH and try to get SMITH to meet CS1.

25         40.     CS1 arrived at CS2's residence at approximately 3:21 pm, and CS2 got into

26  CS1's car.  During the drive to the hospital lobby, CS1 and CS2 engaged in narcotics-

27  related conversation.  CS2 informed CS1 that SMITH did not want to meet CS1 because

28  SMITH believed that CS1 was associated with other people that had stolen from SMITH

AFFIDAVIT OF ANTONY NISCO - 12
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  in the past.  CS2 again told CS1 that he/she would attempt to introduce CS1 to SMITH or

2  give SMITH CS1's phone number for future contact.

3      41.   CS1 and CS2 arrived at the hospital at approximately 3:30 pm.  CS2 exited

4  CS1's vehicle near the entrance to the Baker Medical Center and walked into the

5  building.  After approximately three minutes, I went into the building to see if I could

6  witness the deal occur.  As I entered the lobby of the Baker Medical Center, I saw CS2

7  walking through the lobby and exiting the building.  I followed CS2 out of the building

8  and observed SMITH standing in the median of the roundabout of the building

9  entry/driveway.  TFO Chohrach also observed SMITH loitering on the north side of the

10  building.  TFO Chohrach and I watched CS2 walk towards SMITH.  CS2 and SMITH

11  appeared to exchange words while CS2 walked past SMITH.  CS2 then returned to CS1's

12  vehicle on the west side of the building and entered the passenger side.  At approximately

13  3:58 pm, CS1 and CS2 departed the location followed by investigators in a separate

14  vehicle.

15      42.   Once CS2 entered CS1's vehicle, CS2 could be heard informing CS1 that

16  SMITH was skeptical of meeting with CS1.  CS2 told CS1 that SMITH was in the

17  parking area and to drive by and say "hi" to him.  By the time CS1 drove to where

18  investigators had seen SMITH, he was gone.  CS2 told CS1 that he/she tried to convince

19  SMITH to meet with CS1, but SMITH refused to do so.  CS2 was then heard telling CS1,

20  "24, right?" referring to the pills.  CS2 then informed CS1 that he/she should count them,

21  as CS2 had not.  CS1 dropped CS2 off at his/her residence at approximately 3:44 pm.

22      43.   TFO Chohrach and I followed CS1 back to a pre-arranged neutral meeting

23  location.  CS1 showed me a small tied-off piece of plastic bag in the driver side door

24  pocket of CS1's vehicle.  I retrieved the tied plastic, which contained 24 30mg

25  oxycodone pills stamped "A 215" on them.  I searched CS1 and found no narcotics or

26  currency.  TFO Chohrach and I searched CS1's vehicle and found no narcotics or

27  currency.

28

AFFIDAVIT OF ANTONY NISCO - 13
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | *Contact and subsequent interview/debrief of CS2 on February 13, 2017*

2 | 61.   On February 13, 2017, SA DelVecchio and I interviewed CS2 regarding

3 | his/her knowledge of SMITH's illegal narcotic pill distribution.  We informed CS2 that

4 | SMITH's illegal pill selling had been under investigation for approximately one year, and

5 | that over the course of the investigation investigators had purchased pills from CS2 that

6 | we knew CS2 had obtained from SMITH.  As noted in Section IV, above, CS2 agreed to

7 | cooperate with investigators in the investigation of SMITH, for judicial consideration.

8 | 62.   CS2 stated that he/she had been purchasing small quantities of 30mg

9 | oxycodone pills from SMITH for more than five years.  CS2 stated that he/she mainly

10 | purchased two to three pills a few times per week from SMITH in order to satisfy his/her

11 | addiction to pills.  CS2 further stated that he/she has acted a middle-person in obtaining

12 | pills from SMITH for friends.  CS2 stated that the most he/she has purchased from

13 | SMITH on one occasion is 25 pills.

14 | 63.   CS2 provided the phone number of (253) 224-9412 as the number that

15 | he/she called SMITH on in order to buy pills.  CS2 stated that the number was SMITH's

16 | personal/permanent phone number that SMITH has had since CS2 has known him.  CS2

17 | stated that SMITH also used "burner" phones and changed that number often, but

18 | because CS2 had been dealing with SMITH for a long time, SMITH allowed CS2 to call

19 | him on his personal phone.

20 | 64.   I showed CS2 a Washington Department of Licensing photograph of

21 | SMITH.  CS2 positively identified SMITH as the person he/she purchases pills from.  I

22 | showed CS2 a Washington Department of Licensing photograph of Elizabeth Fukuhara,

23 | SMITH's wife.  CS2 positively identified the person in the photo as Fukuhara and stated

24 | that she was SMITH's wife.

25 | 65.   CS2 stated that SMITH charges between $30 and $35 per pill, depending

26 | on quantity and availability.  CS2 stated that SMITH generally charges $30 for "A" pills

27 | and $35 for "M" pills ("A" are pills stamped "A 4412" and "M" are pills stamped

28 | "M30").  In regards to quantity, CS2 stated that he/she has seen SMITH with a sandwich

AFFIDAVIT OF ANTONY NISCO - 14
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  bag full of pills, but did not know how many pills SMITH kept on hand at any particular

2  time. CS2 stated that he/she did not know who SMITH's source of supply was, or how

3  much money SMITH may have in his possession.

4      66.      CS2 stated that whenever he/she buys pills from SMITH, either he/she goes

5  to SMITH's residence or SMITH comes to CS2's home to deliver the pills. CS2 stated

6  that whenever he/she buys pills from SMITH at his residence, SMITH goes upstairs to

7  his bedroom to retrieve the pills while CS2 waits downstairs.

8      67.      I showed CS2 several photographs of **5937 South I Street, Tacoma,**

9  **Washington** and of vehicles parked in front of the residence. CS2 identified **5937 South**

10 **I Street, Tacoma, Washington** as the residence at which CS2 had purchased pills from

11 SMITH on several occasions. CS2 identified a picture of **TV1** as SMITH's van and

12 stated that SMITH primarily drives this van. CS2 identified a blue Nissan Altima,

13 Washington license plate ARB4551, as Fukuhara's vehicle, but stated that SMITH drives

14 this vehicle on some occasions. CS2 identified a white Honda Civic, Washington license

15 plate AZE9170, as Fukuhara's daughter's vehicle. CS2 stated that the vehicle has been

16 totaled. CS2 stated that approximately six months ago, SMITH purchased a silver BMW

17 with cash, but that SMITH had gotten rid of the BMW after two weeks. CS2 did not

18 know why SMITH had gotten rid of the vehicle. CS2 did not know which model or year

19 the BMW was, or how much SMITH paid for it.

20     68.      CS2 stated that he/she did not believe that SMITH had any form of

21 legitimate employment. CS2 further stated that SMITH is generally always at home.

22 CS2 stated that Fukuhara's two young sons, ages 9 and 11, and Fukuhara's teenage

23 daughter, reside in the residence with SMITH and Fukuhara. Per CS2, Fukuhara has

24 another son that is currently in college.

25     69.      CS2 stated that Fukuhara is a Registered Nurse and believes she has or

26 currently does work at Tacoma General Hospital. CS2 stated that Fukuhara was at one

27 time an emergency room nurse, but did not know if she was anymore. CS2 stated that

28 Fukuhara is fully aware that SMITH is illegally selling pills. CS2 stated that SMITH

AFFIDAVIT OF ANTONY NISCO - 15
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  recently had been arrested.  Though CS2 did not know why SMITH was arrested, CS2
2  was aware that it required SMITH to be on some type of probation and to serve jail time
3  on the weekends.   I verified with staff at the Enumclaw City Jail that SMITH was
4  arrested and booked into the Enumclaw City Jail on October 7, 2016 and released on
5  November 9, 2016 for violations related to Driving Under the Influence and Driving
6  While License Suspended.   CS2 stated that while SMITH was in jail, CS2 contacted
7  Fukuhara directly to purchase pills, and that Fukuhara sold CS2 pills. CS2 stated that
8  Fukuhara charged the same amount for the pills as SMITH.

9         70.      Though much of the information that CS2 provided on SMITH and
10 Fukuhara was unrelated to narcotics trafficking, CS2's knowledge of SMITH and
11 Fukuhara is personal in nature, indicating that CS2 is close with SMITH and further
12 highlighting CS2's credibility in regards to SMITH's narcotics trafficking.

13 ***CS2's controlled purchase from SMITH on February 24, 2017***

14        71.      On February 24, 2017 at approximately 3:13 pm, a DEA SA acting in an
15 undercover (UC) capacity picked up CS2 and drove him/her to a neutral prearranged
16 location.  I accompanied the UC and CS2 in a separate vehicle.  The UC searched CS2's
17 person and property and found no money, drugs, or other contraband.  I equipped CS1
18 with an audio transmitting and recording device.

19        72.      At approximately 3:20 pm, at the direction of and in the presence of the UC
20 and me, CS2 called SMITH at phone number (253) 208-5542 (TT1) to order 20 30mg
21 oxycodone pills.  CS2 said SMITH had provided this phone number on a prior occasion
22 as the number to contact him on to purchase pills.  SMITH did not answer.  At
23 approximately 3:22 pm hours, CS2 sent SMITH a text message on TT1 that read,
24 "Around?"

25        73.      At approximately 3:25 pm, CS2 attempted a second phone call.  SMITH
26 again did not answer. At approximately 3:27 pm, CS2 attempted to call SMITH at his
27 personal/permanent telephone number (253) 224-9142 (TT2).  SMITH did not answer on
28 this number either.

AFFIDAVIT OF ANTONY NISCO - 16
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

74.     At approximately 3:28 pm, CS2 and SMITH (TT1) exchanged the
following text messages:

   SMITH: Waiting

   CS: How long u might be?

   SMITH: Hr

75.     At approximately 4:25 pm, CS2 called SMITH on TT1.  SMITH answered
the phone.  CS2 asked SMITH if he had resupplied.  SMITH told CS2 that he was still
waiting on his source of supply to contact him to meet.  CS2 asked SMITH if CS2 could
"have 20," referring to 20 pills.  SMITH stated that he would have them once he met with
his source of supply.  SMITH told CS2 that he would call him/her in approximately half
an hour.

76.     At approximately 4:39 pm, surveillance units observed a black BMW,
occupied by two unidentified black males, arrive at **5937 South I Street, Tacoma,
Washington**.  The BMW pulled into the driveway of SMITH's residence.  TFO Jason
Catlett and SA Modesitt observed SMITH exit his residence, walk to the passenger side
of vehicle, and speak with the passenger of the vehicle.  After a short period of time,
SMITH went back inside of his residence and the BMW left the area.

77.     At approximately 4:48 pm, SMITH called CS2 from TT1 and told CS2 that
he/she could come over.  Per CS2, this indicated that SMITH had been resupplied and
was ready to sell pills to CS2.  I believe the males in the black BMW most likely
resupplied SMITH with oxycodone pills during their short-stay visit to his residence.
The UC drove CS2 to SMITH's residence, followed by investigators in a separate
vehicle.

78.     At approximately 5:00 pm, TFO Catlett and SA Modesitt observed a silver
Hyundai Sonata, bearing Washington license plate ATX8367, arrive at SMITH's
residence and park in the driveway.  SMITH exited his residence and made contact with
the occupant of the vehicle.  After approximately one minute, the vehicle departed
SMITH's residence travelling southbound on I Street.  SA Modesitt observed a female of

AFFIDAVIT OF ANTONY NISCO - 17
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   unknown race driving the vehicle. A black male was in the passenger seat. This short-
2   stay visit was consistent with drug trafficking activity and I believe the occupant(s) of
3   this Hyundai were drug customers of SMITH's. The short stay visit and interaction with
4   SMITH was consistent with SMITH supplying these visitors with drugs.

5       79.     The UC and CS2 arrived at **5937 South I Street, Tacoma, Washington** at
6   approximately 5:01 pm. The UC parked in front of SMITH's residence and provided
7   CS2 with $560.00 in controlled purchase funds. CS2 exited the UC vehicle and went into
8   **5937 South I Street, Tacoma, Washington** through the front door. I monitored the
9   audio communication between CS2 and SMITH while CS2 was in SMITH's residence.
10  When CS2 entered the residence, he/she asked SMITH, "20 right?" SMITH's reply was
11  inaudible. Later in the conversation, CS2 was heard asking, "20?" SMITH replied, "Um
12  hum." CS2 was then heard counting the pills. After just over a minute inside SMITH's
13  residence, CS2 exited the residence and returned to the UC vehicle.

14      80.     The UC drove CS2 back to a prearranged neutral location. I followed in a
15  separate vehicle. Once at the location, CS2 provided the UC and I with a tied plastic bag
16  containing 20 30mg oxycodone pills of three different varieties with the markings
17  "A215," "M30," and "48 12." CS2 was searched, and no currency, drugs, or other
18  contraband was found.

19      81.     The UC and I debriefed CS2 regarding the controlled purchase. Per CS2,
20  after he/she entered **5937 South I Street, Tacoma, Washington**, SMITH went to the
21  kitchen and retrieved a large Ziploc-style bag containing a large quantity of pills. CS2
22  made a hand gesture to the UC and I indicating a softball-size ball of pills in the baggie.
23  SMITH then went into the living room, sat on the couch, counted out 20 pills, tied them
24  in plastic, and handed them to CS2. Following the debriefing, the UC and I drove CS2
25  back to his/her residence, and dropped him/her off at approximately 5:20 pm.

26
27
28

AFFIDAVIT OF ANTONY NISCO - 18
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    *CS2's controlled purchase from SMITH on March 2, 2017*

2        82.    On February 28, 2017, I applied for and was granted an order to install a

3    GPS tracking device on **TV1**, by Pierce County Superior Court Judge Karena Kirkendoll.

4    I installed a GPS tracking device on **TV1** on March 1, 2017.

5        83.    On March 2, 2017, utilizing the GPS tracker on **TV1**, investigators

6    established surveillance on **TV1** in the Burger King parking lot located at 2909 South

7    38th Street, Tacoma, Washington.  SA Modesitt witnessed SMITH meeting with the

8    driver of a white 2012 GMC Yukon bearing Washington license plate AXE5734.  After a

9    short meeting, **TV1** left the area.  This meeting was consistent with a drug transaction

10   based on my training and experience and knowledge of drug trafficking.  Surveillance

11   units followed **TV1** to the vicinity of South 13th Street and South Pine Street, arriving at

12   approximately 4:06 pm.

13       84.    This same day, at approximately 3:50 pm (while other investigators were

14   conducting surveillance on **TV1** in the Burger King parking lot), the UC picked up CS2

15   and drove him/her to a prearranged neutral location.  I accompanied the UC and CS2 in a

16   separate vehicle.  The UC and I searched CS2's person and property and found no

17   money, drugs, or other contraband.  I equipped CS2 with an audio transmitting and

18   recording device and provided the CS with $280 of controlled purchase funds.

19       85.    At approximately 3:55 pm, at the direction and in the presence of

20   investigators, CS2 called SMITH on TT1 to order 10 30mg oxycodone pills.  SMITH

21   answered the call and the following conversation occurred between SMITH and CS2:

22           SMITH: Hello?

23           CS2: Hey, are you home?

24           SMITH: Nah, I'm actually by your house.

25           CS2: Oh, can I get 10?

26           SMITH: Yep, you at home?

27           CS2: No, I'm not.  I'm on the road, so....

28           SMITH: Pull up by the store, where my mom's house, pull up by the store.

AFFIDAVIT OF ANTONY NISCO - 19
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1       CS2: OK.

2       SMITH: Pull up by, right there on the side by the cleaners. I'll be there in like

3   2 minutes.

4       CS2: OK. I can't be there in 2 minutes, probably like 5 minutes?

5       SMITH: OK.

6       CS2: Is that OK?

7       SMITH: I'll see you when you get there.

8       CS2: OK.

9       SMITH: Alright

10      CS2: Bye.

11      SMITH: Bye.

12      86.     Per CS2, the store SMITH was referring to was a convenience store located

13  at South 12th Street and South Pine Street, Tacoma, Washington. CS2 was familiar with

14  this location. Surveillance units established surveillance at the E-Z Food Store located at

15  2728 S. Pine St., Tacoma, Washington.

16      87.     At approximately 4:00 pm, the UC drove CS2 to the above location to meet

17  SMITH. Per the UC, SMITH called CS2 while the UC and CS2 were driving to the buy

18  location. The recording of this call was inaudible but, per the UC, SMITH told CS2 that

19  he was in the area and ready to complete the deal. CS2 informed SMITH that he/she was

20  close. The UC and CS2 pulled into the parking lot of the E-Z Food Store at

21  approximately 4:10 pm and parked east of the E-Z Food Store. I observed **TV1** parked at

22  the corner of South 13th Street and South Pine Street, in front of **2906 South 13th Street,**

23  **Tacoma, Washington**. This location is one block southwest of the E-Z Food Store. I

24  drove around the block and observed **TV1** pulling into the parking lot of the E-Z Food

25  Store. SMITH parked **TV1** on the east side of the E-Z Food Store. CS2 exited the UC

26  vehicle, walked to **TV1**, opened the rear sliding door of the van, and entered the van.

27  While in the van, the following conversation occurred between SMITH and CS2:

28      CS2: Hi.

1    SMITH: (Inaudible)

2    CS2: Nothing.  Hey, you got it?

3    SMITH: Yep.

4    CS2:  Thank you.

5    88.    CS2 then exited **TV1** and returned to the UC vehicle.  The UC drove CS2

6    back to the prearranged neutral location.  I followed in a separate vehicle.  Once at the

7    location, CS2 provided the UC and me with a tied plastic bag containing 10 30mg

8    oxycodone pills.  All pills were the same variety and stamped "M 30."  The UC and I

9    searched CS2 and found no currency, drugs, or other contraband.

10   89.    Investigators conducted surveillance of SMITH following the controlled

11   purchase.  After the controlled purchase, SMITH drove directly to the vicinity of **2906**

12   **South 13th Street, Tacoma, Washington.**  SA Modesitt observed **TV1** parked,

13   unoccupied, in front of this residence.  At approximately 4:28 pm, SA Modesitt observed

14   SMITH walking from the vicinity of **2906 South 13th Street, Tacoma, Washington** to

15   **TV1.**  Surveillance units followed SMITH as he appeared to complete normal errands,

16   and units terminated surveillance of SMITH at approximately 5:48 pm.  Records checks

17   and database queries revealed that SMITH is associated with **2906 South 13th Street,**

18   **Tacoma, Washington** via familial relationships.

19   ***Surveillance operations of SMITH in March, April, and May of 2017***

20   90.    On March 9, 2017, investigators established surveillance of **TV1** at **2906**

21   **South 13th Street, Tacoma, Washington**.  At approximately 11:10 am, I observed

22   SMITH standing on the porch of this residence.  He walked to **TV1** and entered the

23   driver's side of the vehicle.  Mobile surveillance was established and units followed

24   SMITH to an apartment complex located at 614 South Oakes Street, Tacoma,

25   Washington.  SA Samuel Landis observed SMITH parked next to a silver Lexus bearing

26   Washington license plate AAK4651.  SA Landis observed SMITH walk to the Lexus and

27   meet with the driver.  After approximately one minute, SMITH returned to **TV1** and left

28   the area.  As with SMITH's other short interactions detailed above, this one was

AFFIDAVIT OF ANTONY NISCO - 21
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  consistent with drug trafficking and I believe this interaction with the occupants of the
2  Lexus was a drug transaction.
3      91.    Mobile surveillance continued and followed SMITH back to **2906 South**
4  **13th Street, Tacoma Washington**. At approximately 11:35 am, SMITH left this
5  residence and drove to the area of South 64th Street and South Wapato Street. TFO
6  Oliver Hickman observed SMITH parked on the west side of Wapato Street. After
7  approximately one minute, TFO Hickman observed a silver Acura sedan bearing
8  Washington license plate AZK9912 pull up next to SMITH's vehicle. TFO Hickman
9  observed a "hand-to-hand" transaction between SMITH and the occupant of the Acura.
10 As its name suggests, a "hand-to-hand" transaction is one that involves drug traffickers
11 exchanging drugs/money in a manner similar to a handshake. Shortly after the
12 transaction between SMITH and the occupant of the Acura, both vehicles separated.
13 Again, I believe this interaction was another example of SMITH's drug trafficking
14 activities.
15     92.    Mobile surveillance followed SMITH back to **2906 South 13th Street,**
16 **Tacoma, Washington**. At approximately 12:20 pm, SMITH left this residence driving
17 **TV1** and drove to 1210 South Proctor Street, Tacoma, Washington. I observed **TV1**
18 pulled up next to another unidentified sedan on the side of South Proctor Street. SMITH
19 was leaving the area as I arrived at the location. Based on my training and experience, I
20 believe this was yet another drug transaction involving SMITH, given its short duration
21 and its consistency with other suspected drug transactions involving SMITH.
22     93.    Mobile surveillance was reestablished and followed SMITH to the area of
23 South 19th Street and South I Street, Tacoma, Washington. TFO Earick observed
24 SMITH pulled to the side of the road and an unidentified black male run across the street
25 to meet with SMITH at the driver's window of **TV1** for approximately ten seconds. The
26 unidentified black male returned to his own vehicle and left the area. TFO Earick was
27 able to identify the vehicle as a white four door Buick. However, there was no front
28

1  license plate and surveillance units were not able to catch up with the vehicle in time to
2  observe the rear license plate. I believe this was another of SMITH's drug transactions.
3      94.    SMITH left the area and travelled to the area of 1935 South I Street,
4  Tacoma, Washington. SMITH and a black male passenger exited **TV1** and entered one
5  of the apartments located in the area. Surveillance units were not able to determine the
6  exact apartment they entered. After approximately ten minutes, SMITH exited the
7  apartment and left the area in **TV1**. Again, in my experience, this short-stay behavior is
8  consistent with drug trafficking. These visits and suspected transactions all indicated to
9  me that SMITH is using **TV1** for the purpose of distributing his drugs and collecting
10 payments for those drugs.
11     95.    Mobile surveillance was once again established on SMITH as he left the
12 apartment. Surveillance units followed SMITH for about the next hour while he drove
13 around the Tacoma Hilltop area, making numerous short duration stops at gas stations
14 and on residential roads to meet with other vehicles. Between meetings with these other
15 vehicles, SMITH would frequently return to **2906 South 13th Street, Tacoma,**
16 **Washington**. My training and experience in investigating narcotics traffickers leads me
17 to believe that SMITH's pattern of behavior, i.e. numerous short stops and meetings with
18 vehicles, is indicative of narcotics trafficking. I further believe that SMITH is using his
19 secondary residence, **2906 South 13th Street, Tacoma, Washington,** to store a quantity
20 of his drugs or drug proceeds, based on his repeated short-duration visits to this location
21 in between suspected drug transactions.
22     96.    On March 15, 2017, investigators established surveillance at **5937 South I**
23 **Street, Tacoma, Washington**. **TV1** was parked outside of the residence. At
24 approximately 11:45 am, I observed a white GMC Yukon bearing Washington license
25 plate AXE5734, pull up in front of **5937 South I Street, Tacoma, Washington**. This is
26 the same vehicle investigators observed SMITH meet with prior to the controlled
27 purchase on March 2, 2017.
28

AFFIDAVIT OF ANTONY NISCO - 23
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

97.     I saw SMITH exit his residence, approach the driver's side window of the Yukon, and complete a "hand-to-hand" transaction with the driver of the vehicle. SMITH then returned to his house. The meeting between SMITH and the driver lasted less than 15 seconds. The vehicle then left southbound on South I Street. TFO Earick was able to verify that the driver of the vehicle was a white female. I believe this interaction between SMITH and the white female was a drug transaction, based on my training and experience.

98.     At approximately 12:54 pm, I observed a gray Kia Optima, bearing Washington license plate ARA7570, pull up in front of **5937 South I Street, Tacoma, Washington**. SMITH exited his residence, entered the passenger side of the vehicle, and closed the door. After approximately 30 seconds, SMITH exited the vehicle and returned to his residence; the vehicle left the area. I believe this was yet another drug transaction involving SMITH.

99.     On April 18, 2017 at approximately 3:00 pm, TFO Chohrach and I established surveillance on **5937 South I Street, Tacoma, Washington**. At about 3:44 pm, I observed a blue Honda CRV bearing Washington license plate 729XHR pull up and park in front. I observed SMITH walk from his residence to the driver's side window of the vehicle. The driver of the vehicle handed SMITH some currency. SMITH then returned to his residence and the Honda departed. The interaction between SMITH and the driver of the Honda lasted less than 15 seconds and was consistent with drug trafficking activity, based on my training and experience.

100.     At approximately 5:00 pm, I observed a blue Pontiac sedan bearing Washington license plate BDX4783, driven by an unidentified black female, pull into the driveway of **5937 South I Street, Tacoma, Washington**. I observed SMITH walk from his residence and enter the passenger side of the vehicle. SMITH and the black female driver conversed for approximately one minute. SMITH then exited the vehicle and returned to his residence. Based on my training and experience, I believe SMITH's

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 interactions with the occupant of the vehicles at **5937 South I Street, Tacoma,**
2 **Washington** are indicative of narcotics trafficking.

3     101.    On May 8, 2017, at approximately 11:00 am, investigators again
4 established surveillance on SMITH's residence at **5937 South I Street, Tacoma,**
5 **Washington**. At approximately 3:25 pm, SA Modesitt observed SMITH exit the
6 residence and get into the back seat of a silver Mitsubishi sedan, Washington license
7 plate BDY4725. The vehicle left northbound on South I Street. SA Modesitt observed
8 an unidentified black female driver and an unidentified black male front passenger.

9     102.    Investigators established mobile surveillance and followed SMITH (in the
10 Mitsubishi) directly to the Clarion Inn located at 6802 Tacoma Mall Boulevard, Tacoma,
11 Washington. The Mitsubishi parked under the drop-off/pick-up covered area in front of
12 the hotel. Approximately one minute after the Mitsubishi arrived at the Clarion Inn, I
13 drove past the vehicle and noticed the front passenger and SMITH were no longer in the
14 vehicle. The front passenger door was open on the vehicle and the female still occupied
15 the driver's seat. At approximately 3:40 pm, TFO Hickman observed the Mitsubishi
16 leave the Clarion Inn northbound on Tacoma Mall Boulevard. The front passenger and
17 SMITH were back in the vehicle in their original positions.

18     103.    Investigators followed the Mitsubishi to 1543 South Oakes Street, Tacoma,
19 Washington. SA Modesitt saw the front passenger exit the vehicle and enter the south
20 side of the property through the fence. Approximately one minute later, the passenger
21 returned to the Mitsubishi, which then drove away from the residence. I could see about
22 six security cameras affixed to the exterior of this residence. In my experience, a
23 residence such as this, with so many security cameras on its exterior and utilized by
24 suspected drug traffickers or their associates, is often used as a drug stash location.

25     104.    Mobile surveillance was established and units followed the Mitsubishi to
26 **2906 South 13th Street, Tacoma, Washington**, arriving at approximately 3:48 pm.
27 Investigators observed the passenger and SMITH exit the vehicle and walk toward the
28 residence. SMITH and the vehicle's passenger spoke with some unidentified black

AFFIDAVIT OF ANTONY NISCO - 25
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  females and children in front of the residence.  After approximately three minutes,

2  SMITH and the passenger entered the Mitsubishi and the vehicle left the area.  Based on

3  my training and experience, I believe that the short stops at the Clarion Inn and the

4  residence located at 1543 South Oakes Street, Tacoma, Washington, are indicative of

5  narcotics trafficking.  Narcotics dealers often meet sources of supply or customers at

6  local hotels to avoid detection of law enforcement.

7  ## VI.    TACTICS USED BY DRUG TRAFFICKERS

8          105.    Based upon my training, experience, and participation in this and other

9  investigations involving narcotics trafficking, my conversations with other experienced

10  investigators and law enforcement investigators with whom I work, and interviews of

11  individuals who have been involved in the trafficking of methamphetamine, cocaine,

12  oxycodone, and other drugs, I have learned and know the following:

13          106.    Drug trafficking organizations often use "stash houses" to conceal their

14  illegal activities and contraband.  Such stash houses allow drug traffickers to keep their

15  contraband at a hidden location, where they may not live, thereby making it more

16  difficult for law enforcement and/or competitors to identify these locations where drugs

17  and drug proceeds may be hidden.

18          107.    It is common for drug dealers to hide proceeds of illegal narcotics sales and

19  records of illegal narcotics transactions in secure locations within their residences, stash

20  houses, storage units, garages, outbuildings and/or vehicles on the property for their

21  ready access and to conceal them from law enforcement authorities.

22          108.    It is common to find papers, letters, billings, documents, and other writings,

23  which show ownership, dominion, and control of businesses, residences, and/or vehicles

24  in the residences, stash houses, storage units, garages, outbuildings and/or vehicles of

25  drug traffickers.  Items of personal property that tend to identify the person(s) in

26  residence, occupancy, control, or ownership of the premises also include canceled mail,

27  deeds, leases, rental agreements, photographs, personal telephone books, diaries, utility

28  and telephone bills, statements, identification documents, keys, financial papers, rental

AFFIDAVIT OF ANTONY NISCO - 26
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   receipts and property ownership papers, personal and business telephone and address
2   books and telephone toll records, and other personal papers or identification cards in the
3   names of subjects involved in the criminal activity being investigated.

4       109.    Drug traffickers frequently amass large proceeds from the illegal sale of
5   controlled substances that they attempt to legitimize. To accomplish this goal, drug
6   traffickers use financial institutions and their attendant services, securities, cashier's
7   checks, safe deposit boxes, money drafts, real estate, shell operations, and business
8   fronts. Persons involved in drug trafficking and/or money laundering keep papers
9   relating to these activities for future reference, including federal and state tax records,
10  loan records, mortgages, deeds, titles, certificates of ownership, records regarding
11  investments and securities, safe deposit box rental records and keys, and photographs. I
12  know from my training and experience that often items of value are concealed by persons
13  involved in large scale drug trafficking inside of safes, lock boxes, and other secure
14  locations within their residences, outbuildings, and vehicles.

15      110.    Drug traffickers very often place assets in names other than their own to
16  avoid detection of these assets by government agencies, and even though these assets are
17  in other individual or business names, the drug dealers actually own and continue to use
18  these assets and exercise dominion and control over them.

19      111.    Drug traffickers often document aspects of their criminal conduct through
20  photographs or videos of themselves, their associates, their property, and their product.
21  Drug traffickers usually maintain these photographs or videos in their possession.

22      112.    Drug traffickers often maintain large amounts of US currency in order to
23  maintain and finance their ongoing illegal drug trafficking business. Drug traffickers
24  from other countries operating in the United States frequently use wire remitters and bulk
25  cash transfers to transfer currency to co-conspirators living in other countries.

26      113.    Drug traffickers commonly have in their possession, on their person, and at
27  their residences and/or in their storage units, firearms and other weapons to protect and
28  secure a drug trafficker's property.

AFFIDAVIT OF ANTONY NISCO - 27
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    114.   Drug traffickers use mobile electronic devices including cellular telephones

2 and other wireless communication devices for the purpose of conducting their illegal

3 trafficking business.  As described below, such equipment often contains evidence of

4 these illegal activities.

5    115.   Traffickers of controlled substances commonly maintain addresses,

6 vehicles, or telephone numbers which reflect names, addresses, vehicles, and/or

7 telephone numbers of their suppliers, customers, and associates in the trafficking

8 organization, and it is common to find drug traffickers keeping records of said associates

9 in cellular telephones and other electronic devices.  Traffickers often maintain cellular

10 telephones for ready access to their clientele and to maintain their ongoing narcotics

11 business.  Traffickers frequently change their cellular telephone numbers to avoid

12 detection by law enforcement, and it is common for traffickers to use more than one

13 cellular telephone at any one time.

14    116.   Drug traffickers use cellular telephones as a tool or instrumentality in

15 committing their criminal activity.  They use them to maintain contact with their

16 suppliers, distributors, and customers.  They prefer cellular telephones because, first, they

17 can be purchased without the location and personal information that land lines require.

18 Second, they can be easily carried to permit the user maximum flexibility in meeting

19 associates, avoiding police surveillance, and traveling to obtain or distribute drugs.

20 Third, they can be passed between members of a drug conspiracy to allow substitution

21 when one member leaves the area temporarily.  Since cellular phone use became

22 widespread, every drug dealer I have interacted with has used one or more cellular

23 telephones for his or her drug business.  I also know that it is common for drug traffickers

24 to retain in their possession phones that they previously used, but have discontinued

25 actively using, for their drug trafficking business.  Based on my training and experience,

26 the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or

27 crimes.  This includes the following:

28

AFFIDAVIT OF ANTONY NISCO - 28
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1         a.     The assigned number to the cellular telephone (known as the mobile

2  directory number or MDN), and the identifying telephone serial number (Electronic

3  Serial Number (ESN), Mobile Identification Number (MIN), International Mobile

4  Subscriber Identity (IMSI) number, or International Mobile Equipment Identity (IMEI)

5  number) are important evidence because they reveal the service provider, allow agents to

6  obtain subscriber information, and uniquely identify the telephone. This information can

7  be used to obtain toll records, to identify contacts by this telephone with other cellular

8  telephones used by co-conspirators, to identify other telephones used by the same

9  subscriber or purchased as part of a package, and to confirm if the telephone was

10  contacted by a cooperating source.

11         b.     The stored list of recent received calls and sent calls is important

12  evidence. It identifies telephones recently in contact with the telephone user. This is

13  valuable information in a drug investigation because it will identify telephones used by

14  other members of the organization, such as suppliers, distributors and customers, and it

15  confirms the date and time of contacts. If the user is under surveillance, it identifies what

16  number he called during or around the time of a surveilled drug transaction or meeting.

17  Even if a contact involves a telephone user not part of the conspiracy, the information is

18  helpful (and thus is evidence) because it leads to friends and associates of the user who

19  can identify the user, help locate the user, and provide information about the user.

20  Identifying a defendant's law-abiding friends is often just as useful as identifying his

21  drug-trafficking associates.

22         c.     Stored text messages are important evidence, similar to stored

23  numbers. Agents can identify both drug associates, and friends of the user who likely

24  have helpful information about the user, his location, and his activities.

25         d.     Photographs on a cellular telephone are evidence because they help

26  identify the user, either through his or her own picture, or through pictures of friends,

27  family, and associates that can identify the user. Pictures also identify associates likely to

28  be members of the drug trafficking organization. Some drug traffickers photograph

AFFIDAVIT OF ANTONY NISCO - 29
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    groups of associates, sometimes posing with weapons and showing identifiable gang

2    signs. Also, digital photos often have embedded "geocode" information within them.

3    Geocode information is typically the longitude and latitude where the photo was taken.

4    Showing where the photo was taken can have evidentiary value. This location

5    information is helpful because, for example, it can show where coconspirators meet,

6    where they travel, and where assets might be located

7              e.      Stored address records are important evidence because they show the

8    user's close associates and family members, and they contain names and nicknames

9    connected to phone numbers that can be used to identify suspects.

10   117.   It is common for drug dealers to possess narcotics, drug paraphernalia, and

11   other items which are associated with the sale and use of controlled substances such as

12   scales, containers, cutting agents/substances, and packaging materials in their residences,

13   stash houses, storage units, garages, outbuildings and/or vehicles on their property.

14   118.   Drug traffickers commonly have in their possession, that is, on their person,

15   at their residences, stash houses, storage units, garages, outbuildings and/or vehicles,

16   firearms, and other weapons, which are used to protect and secure their property.

17   119.   Drug distributors frequently try to conceal their identities by using

18   fraudulent names and identification cards. Once identities have been created or stolen

19   from other individuals, drug traffickers use those identifications to falsify records such as

20   DOL records and phone records to evade detection by law enforcement.

21   120.   It is a common practice for drug traffickers to maintain records relating to

22   their drug trafficking activities in their residences, stash houses, storage units, garages,

23   outbuildings and/or vehicles. Because drug traffickers in many instances will "front"

24   (i.e., sell on consignment) controlled substances to their clients, or alternatively, will be

25   "fronted" these items from their suppliers, such record keeping is necessary to keep track

26   of amounts paid and owed, and such records will also be maintained close at hand so as

27   to readily ascertain current balances. These records include "pay and owe" records to

28   show balances due for drugs sold in the past (pay) and for payments expected (owe) as to

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    the trafficker's suppliers and distributors, telephone and address listings of clients and

2    suppliers, and records of drug proceeds.  These records are commonly kept for an

3    extended period of time.

4        121.    Drug traffickers maintain books, records, receipts, notes, ledgers, airline

5    tickets, money orders, and other papers relating to the transportation and distribution of

6    controlled substances.  These documents, whether in physical or electronic form, are

7    maintained where the traffickers have ready access to them.  These documents include

8    travel records, receipts, airline tickets, auto rental agreements, invoices, and other

9    memorandum disclosing acquisition of assets and personal or business expenses.  I also

10   know that such records frequently are maintained in narcotics traffickers' residences,

11   stash houses, storage units, garages, outbuildings and/or vehicles.

12                              **VII.    CONCLUSION**

13       122.    This Affidavit is submitted in support of an application to search two

14   specific locations and one particular vehicle (in addition to other vehicles found within

15   the curtilage of the two specified locations), more fully described in Attachments A1

16   through A3.  Based on controlled purchases, such as those described in this Affidavit, as

17   well as continued physical and electronic surveillance, I believe SMITH has used and

18   continues to use the locations and vehicle described in this Affidavit to further his drug

19   //

20   //

21   //

22

23

24

25

26

27

28

AFFIDAVIT OF ANTONY NISCO - 31
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  trafficking and money laundering crimes in violation of Title 21, United States Code,

2  Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and

3  1957, and that evidence of such, as described more particularly in Attachment B, will be

4  found at these locations and in this vehicle.

5

6

7

8  ANTONY NISCO,
   Task Force Officer

9  Drug Enforcement Administration

10  SUBSCRIBED and SWORN TO before me this _12th_ day of May, 2017.

11

12

13  DAVID W. CHRISTEL,

14  UNITED STATES MAGISTRATE
    JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF ANTONY NISCO - 32
USAO 2017R00530

1
2

## ATTACHMENT A1
## LOCATION TO BE SEARCHED

3       This warrant authorizes the government to search the following location for

4   evidence and/or fruits of the commission of the following crimes:  distribution and

5   possession with intent to distribute controlled substances in violation of Title 21, United

6   States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of

7   Title 21, United States Code, Section 846; use of a communications facility in

8   furtherance of a felony drug offense in violation of Title 21, United States Code, Section

9   843(b); and laundering of monetary instruments and conspiracy to commit money

10  laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, as

11  further described in Attachment B hereto.

12      The search is to include all rooms within the residence, and any garages or storage

13  rooms within the curtilage of the residence, whether attached or detached, and any

14  vehicles found within such garage, in the driveway, or elsewhere within the curtilage of

15  the residence, whether or not particularly named among the vehicles for which specific

16  search authorization is sought.

17      **5937 South I Street, Tacoma, Washington, 98408**.  This is a single-family, 1567

18  square foot, two-story dwelling built in 2008 with blue and yellow exterior paint, a white

19  front door, white garage door, and white trim.  Black numbers "5937" are affixed

20  vertically to the northwest corner of the residence next to the garage door.

21
22
23
24
25
26
27
28



AFFIDAVIT OF ANTONY NISCO - 33
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## ATTACHMENT A2
## LOCATION TO BE SEARCHED

This warrant authorizes the government to search the following location for evidence and/or fruits of the commission of the following crimes: distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; use of a communications facility in furtherance of a felony drug offense in violation of Title 21, United States Code, Section 843(b); and laundering of monetary instruments and conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, as further described in Attachment B hereto.

The search is to include all rooms within the residence, and any garages or storage rooms within the curtilage of the residence, whether attached or detached, and any vehicles found within such garage, in the driveway, or elsewhere within the curtilage of the residence, whether or not particularly named among the vehicles for which specific search authorization is sought.

**2906 South 13th Street, Tacoma, Washington 98405.**  The is a single-family, 1650 square foot, two-story dwelling built in 1904 with blue exterior paint, a white front door, and white trim.  Black numbers "2906" are affixed horizontally above the front door.



AFFIDAVIT OF ANTONY NISCO - 34
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## ATTACHMENT A3
## VEHICLE TO BE SEARCHED

This warrant authorizes the government to search the following vehicle for evidence and/or fruits of the commission of the following crimes:  distribution and possession with intent to distribute controlled substances in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; use of a communications facility in furtherance of a felony drug offense in violation of Title 21, United States Code, Section 843(b); and laundering of monetary instruments and conspiracy to commit money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957, as further described in Attachment B hereto.

**A white 1999 Dodge Caravan, bearing Washington license plate AYH1572 and VIN 2B4GP44G8XR171777,** registered to Elizabeth J. Fukuhara at 5937 South I Street, Tacoma, Washington 98408.



AFFIDAVIT OF ANTONY NISCO - 35
USAO 2017R00530

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800